## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HEIDI MATHIASEN, in her individual capacity and
as the personal representative for the
ESTATE OF DONALD G. MATHIASEN,
and ANGELIQUE CORDOVA

       Plaintiffs,

                                 Case No. 17-CV-1159 JHR/KBM

v.

BOARD OF COUNTY COMMISSIONERS
OF RIO ARRIBA COUNTY, SOUTHWEST
CORRECTIONAL MEDICAL GROUP, INC.,
ACCOUNTABLE HEALTHCARE STAFFING, INC.,
JOSEPH AQUINO, LARRY DEYAPP,
PATRICK GARCIA, JIMMY MARTINEZ,
JAMES CULIN, ALIFONSO DELEON,
ELIZABETH RAMIREZ, GUY JORDAN,
GENARO MADRID, and RONNIE CARRILLO,

       Defendants.

## FIRST AMENDED COMPLAINT

Plaintiffs Heidi Mathiasen, in her individual capacity and as the personal representative for the Estate of Donald G. Mathiasen, and Angelique Cordova, by and through their attorneys, Rothstein Donatelli LLP, Jared M. Barliant & Associates, P.C., and Bienvenu Law Office, bring the following complaint for damages against Defendants pursuant to 42 U.S.C. § 1983; the New Mexico Wrongful Death Act, NMSA 1978, § 41-2-1 *et seq.*; the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 *et seq.*; and the common law and states as follows:

## PARTIES

1.     Plaintiff Heidi Mathiasen (hereinafter referred to as "Ms. Mathiasen") is a resident of Rio Arriba County, New Mexico, and is the mother of decedent Donald G. Mathiasen. Ms.

Mathiasen was appointed by the First Judicial District Court of New Mexico as the Wrongful Death Personal Representative of the Estate of Donald G. Mathiasen on November 18, 2015. Ms. Mathiasen brings this suit in her individual capacity and representative capacity on behalf of the Estate of Donald G. Mathiasen.

2.      Plaintiff Angelique Cordova (hereinafter referred to as "Ms. Cordova") is a resident of Rio Arriba County, New Mexico, and was the fiancé and significant other of decedent Donald G. Mathiasen.

3.      Donald G. Mathiasen (hereinafter referred to as "Donald") died on October 4, 2015, at the Rio Arriba County Adult Detention Facility in the City of Tierra Amarilla, County of Rio Arriba, State of New Mexico. At the time of his death, Donald was twenty-three (23) years old and incarcerated at the Rio Arriba County Adult Detention Facility (hereinafter referred to as "RACADF").

4.      Defendant Board of County Commissioners of Rio Arriba County (hereinafter referred to as "Rio Arriba County") is a political subdivision of the State of New Mexico. Pursuant to NMSA 1978, § 4-46-1, all suits or proceedings against a county are to be brought in the name of the board of county commissioners of that county. At all times material hereto, Rio Arriba County was a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3. At all times material hereto, Rio Arriba County owned, operated, supervised, directed and controlled the RACADF located in Tierra Amarilla, New Mexico, and acted in the same through its employees, agents and contractors. Pursuant to NMSA 1978, § 4-44-19; NMSA 1978, §§ 33-3-3 through 33-3-8; and NMSA 1978, § 33-3-13, Rio Arriba County was statutorily obliged to provide for the confinement of inmates incarcerated under its jurisdiction and had a corresponding obligation to appropriate funds and otherwise

provide the necessary funding to maintain and operate a facility for the safe incarceration of inmates under its jurisdiction. Rio Arriba County is charged with the responsibility to administer, manage, and supervise the health care delivery system at the RACADF.

5.      Defendant Southwest Correctional Medical Group, Inc. (hereinafter referred to as "Southwest Medical") is a foreign corporation registered in the State of Delaware and with its principle place of business in California licensed to conduct business in the State of New Mexico. Defendant Southwest Medical's agent for service of process is CT Corporation System, 206 South Coronado Ave., Espanola, New Mexico 87532-2792. At all times material hereto, Defendant Southwest Medical had entered into a written contract with Rio Arriba County to provide medical services to inmates and detainees at the RACADF, and supervised and implemented such care, including, but not limited to, health assessments and arranging for ambulance services, hospitalization, and specialty services, if necessary. Southwest Medical performed a typically governmental function by assuming responsibility for inmate health care with duties, under both common law and the written contract entered into with Rio Arriba County, to provide reasonable medical care and emergency care to inmates at RACADF, including Donald.

6.      Defendant Accountable Healthcare Staffing, Inc. (hereinafter referred to as "Accountable Healthcare") is a foreign corporation registered in the State of Delaware with its principle place of business in Florida licensed to conduct business in the State of New Mexico. Defendant Accountable Healthcare's agent for service of process is National Registered Agents Inc., 206 South Coronado Ave., Espanola, New Mexico 87532-2792. At all times material hereto, Defendant Accountable Healthcare maintained a written agreement with Defendant Southwest Medical to provide medical staffing to Defendant Southwest Medical for purposes of providing medical services to inmates and detainees at the RACADF as set forth herein (hereinafter "Staffing

3

Services Agreement"). Defendant Accountable Healthcare performed a typically governmental function by assuming responsibility to provide for inmate health care with duties to provide reasonable medical care to inmates at RACADF, including Donald.

7.     Defendant Joseph Aquino is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Aquino was employed by the Rio Arriba County Sheriff's Office as a Sheriff's Deputy.

8.     Defendant Larry DeYapp is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as the Detention Administrator of RACADF. At all times material hereto, Defendant DeYapp supervised the operation and daily management of the RACADF, was responsible for the policies, practices and customs of the RACADF and the implementation of, and adherence to, the same. Defendant DeYapp was further responsible for the screening, hiring, training, supervision, discipline, counseling and control of RACADF officers, staff, contractors, agents and employees.  Defendant DeYapp is sued in both his personal and official capacity.

9.     Defendant Patrick Garcia is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Garcia was a registered nurse and agent of Southwest Medical and Accountable Healthcare acting on behalf of Southwest Medical and Accountable Healthcare to provide medical services at RACADF.

10.     Defendant James Culin is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Culin was employed as a correctional officer and shift supervisor at the RACADF.  Defendant Culin was, upon information and belief, responsible for supervision, discipline, counseling and control of the RACADF officers in his command, including officers assigned to the booking unit, where Donald was incarcerated at the

4

RACADF. Defendant Culin is sued in both his personal and official capacity.

11.    Defendant Guy Jordan is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Jordan was employed as a correctional officer and supervisor at the RACADF. Defendant Jordan was, upon information and belief, responsible for the supervision, discipline, counseling and control of the RACADF officers in his command, including officers assigned to the booking unit, where Donald was incarcerated at the RACADF. Defendant Jordan is sued in both his personal and official capacity.

12.    Defendant Jimmy Martinez is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Martinez was employed as a correctional officer and supervisor at the RACADF. Defendant Martinez was, upon information and belief, responsible for the supervision, discipline, counseling and control of the RACADF officers in his command, including officers assigned to the booking unit, where Donald was incarcerated at the RACADF. Defendant Martinez is sued in both his personal and official capacity.

13.    Defendant Alifonso Deleon is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Deleon was employed as a correctional officer at the RACADF.

14.    Defendant Elizabeth Ramirez is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Ramirez was employed as a correctional officer at the RACADF.

15.    Defendant Ronnie Carrillo is, upon information and belief, a resident of the County of Rio Arriba. At all times material hereto, Defendant Carrillo was employed as a correctional officer at the RACADF.

16.    Defendant Genaro Madrid is, upon information and belief, a resident of the County

of Rio Arriba. At all times material hereto, Defendant Madrid was employed as a correctional officer at the RACADF.

17.     Defendants Rio Arriba County, Southwest Medical and/or DeYapp were responsible for the screening, hiring, training, monitoring, supervision, and disciplining of subordinate employees at the RACADF and Southwest Medical.

18.     Defendants Rio Arriba County and/or De Yapp were responsible for the policy-making activities and supervision of subordinate officers and contractors of the RACADF.

19.     At all times material hereto, Defendants Rio Arriba County, DeYapp and Southwest Medical (hereinafter "the Rio Arriba Defendants"), individually and/or acting through their agents, officers, employees, and contractors, acted in concert with one another pursuant to a common plan or objective, and each of the Rio Arriba Defendants is responsible for the acts and omissions of the other Defendants and their agents, officers, employees, and contractors under the doctrine of respondeat superior and other doctrines of vicarious liability.

## JURISDICTION AND VENUE

20.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

21.     This Court has jurisdiction over the subject matter and parties to this action pursuant to the Court's general jurisdiction, N.M. Const. art. VI, § 13, NMSA 1978, § 38-3-1.1, NMSA 1978, § 41-4-18.

22.     This Complaint is timely pursuant to NMSA 1978, § 41-4-15 and 42 U.S.C. § 1988.

23.     All of the acts complained of herein which constitute the basis for liability on the claims brought pursuant to the New Mexico Tort Claims Act come within the scope of the waivers of immunity contained within the act.

24.     Plaintiffs gave written notice of the claims contained herein pursuant to the New

6

Mexico Tort Claims Act in compliance with the requirements of the act, NMSA 1978, § 41-4-16.

25.     All notice requirements under the New Mexico Tort Claims Act were properly complied with because all applicable Defendants had actual notice within ninety (90) days of the events that gave rise to the claims brought forth herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

26.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully stated herein.

27.     On October 2, 2015, Donald was arrested by Rio Arriba County Sheriff Deputies, including Defendant Aquino, and transported to the Rio Arriba County Sheriff's Office.

28.     Following his arrest, while at the station, Donald told Rio Arriba County Sheriff Deputies, including Defendant Aquino, he wanted medical assistance and clearance from a hospital prior to being transported to the RACADF.

29.     While Donald was awaiting transport to RACADF, Ms. Mathiasen and Ms. Cordova also informed Defendant Aquino that Donald needed medical clearance to go to the hospital. Ms. Mathiasen further informed Defendant Aquino that Donald had previously been hospitalized and almost died after he failed to receive adequate medical care from the RACADF. Defendant Aquino assured Ms. Mathiasen that Donald would be transported to the hospital.

30.     Later on October 2, 2015, Ms. Mathiasen again was in contact with Defendant Aquino and inquired if Donald had been taken to the hospital, and Defendant Aquino assured her that Donald was being taken to the hospital at that time.

31.     Donald was not taken to the hospital for medical attention and/or clearance. Instead, Rio Arriba County Sheriff's Deputies transported Donald directly to the RACADF for booking.

32.     Donald had previously been in custody at the RACADF in 2012 and 2013. During

said periods of incarceration, Donald's history of opioid abuse and severe withdrawal from the same had been documented by RACADF.

33.     Donald was booked into RACADF by booking officer Destiny Martinez at approximately 9:00 p.m. on October 2, 2015.

34.     Donald's booking paperwork indicated he was currently using heroin and Xanax, most recently earlier that same day. Donald's booking paperwork further indicated that he suffered from withdrawal when he stopped using said substances, including "SWEATS, ANXIETY, NUASEA [*sic*], CONFUSION, THROWIND [*sic*] UP BLOOD" and had a history of seizures. It was further noted within the booking paperwork that Donald was exhibiting signs of anxiousness.

35.     Despite the documented serious medical issues associated with Donald's withdrawal concerns, he was not examined by medical personnel upon booking. Donald was not provided a medical examination until the following day, October 3, 2015.

36.     A Southwest Correctional Medical Group Incorporated "Medical Clearance Form" dated October 3, 2015, and signed by Defendant Garcia indicated Donald required detoxification for "Benzo", with a handwritten reference to "Ativan."

37.     The October 3, 2015, "Medical Clearance Form" indicated Donald also required detoxification for "Opiate", with a handwritten reference to "Heroin."

38.     Donald had previously been booked into RACADF on or about June 4, 2013. According to the Inmate Screening documentation from June 4, 2013, RACADF staff was aware that Donald had a "[h]istory of serious withdrawals/seizures."

39.     RACADF records indicate Donald exhibited withdrawal symptoms on June 5, 2013, including "Loss of Appetite", "Night Sweats", "Fever", "Fatigue", and "Weakness." None of these symptoms were noted when Donald was booked approximately sixteen (16) hours earlier

8

on June 4, 2013. After being released from RACADF on that occasion, Donald was gravely ill and hospitalized as a result of withdrawal during his incarceration.

40.     When Donald was booked on October 2, 2015, he was already outwardly nervous, restless and anxious. Shortly thereafter, he was showing signs of drug withdrawal. Upon information and belief, Booking Officer Destiny Martinez notified superiors, including Defendant Jimmy Martinez, that Donald needed medical attention and should be transported to the hospital for treatment.

41.     The RACADF does not have a permanent medical unit or in-house medical staff. Accordingly, in September 2014, Rio Arriba entered into an Agreement for Inmate Health Care Services at Rio Arriba County, New Mexico (hereinafter referred to as "Rio Arriba Agreement") with Defendant Southwest Correctional Medical Group, Inc., to "administer health care services and related administrative services at the [RACADF]." A copy of the Rio Arriba Agreement, in which Rio Arriba County and Southwest Medical agreed to "jointly operate common healthcare services at the [RACADF]", is attached to this Complaint as Exhibit A and incorporated herein. Through the Rio Arriba Agreement, Rio Arriba County delegated certain medical responsibilities of the County concerning persons in County custody to Southwest Medical under the supervision of Rio Arriba County.

42.     Pursuant to the Rio Arriba Agreement, an initial determination as to Donald's fitness for confinement was to be made by Southwest Medical.

43.     Pursuant to the Rio Arriba Agreement, licensed practical nurses were required to be staffed by Southwest Medical at the RACADF for 8 hours during the day shift seven days a week and 8 hours during the evening shift seven days a week.

44.     Pursuant to the Rio Arriba Agreement, on-call medical personnel were to be

9

available, through Southwest Medical, to the RACADF "24 hours per day and 7 days per week."

45.     Pursuant to the Rio Arriba Agreement, Rio Arriba County screened all proposed staff, employees, agents and/or subcontractors of Southwest Medical that were to provide services at the RACADF and reserved the right to remove any with whom the County was dissatisfied. As such, Rio Arriba County had authority over Southwest Medical personnel sent to RACADF pursuant to the Rio Arriba Agreement.

46.     Pursuant to the Rio Arriba Agreement, staff of the RACADF were to be provided ongoing education and training in regards to health and mental health. This education and training was to be provided by Southwest Medical.

47.     Pursuant to the Rio Arriba Agreement, Defendant Southwest Medical was to provide necessary medical care to arrested persons with medical issues pre-dating their confinement "until the arrested person can be transported to a medical care facility by the arresting agency or their designee."

48.     Pursuant to the Rio Arriba Agreement, Defendant Southwest Medical was to identify to Rio Arriba County all incarcerated persons that may require extensive medical care while incarcerated.

49.     Pursuant to the Staffing Services Agreement, Defendant Accountable Healthcare was to provide medical professionals to "comply with all applicable state and federal laws and with Client policies and procedures" and to act "in the best interest of [inmate] patient population, [and] their health and welfare."   A copy of the Staffing Services Agreement is attached as Exhibit "B".

50.     Donald was not seen by medical personnel at the RACADF on October 2, 2015.

51.     RACADF staff did not initiate any detoxification or withdrawal watch and/or

observation for Donald after he was booked.

52.   When Donald was placed in a cell with other inmates in the booking area, he was already "really sick and throwing up" according to one of the other inmates.

53.   Throughout the night, Donald was overheard by other inmates loudly seeking help because he was repeatedly and simultaneously defecating and urinating himself. Inmates also reported that he was overheard vomiting throughout the night. RACADF staff provided no assistance and did not seek medical assistance for Donald.

54.   Donald was not taken for medical care by RACADF staff until October 3, 2015, when Defendant Garcia, acting on behalf of Defendant Rio Arriba County, Defendant Southwest Medical and Defendant Accountable Healthcare, conducted an intake examination. According to medical chart notes, Donald was not examined until 2:30 p.m. on October 3, 2015, a delay of approximately seventeen and one-half hours from the time of booking.

55.   During the October 3, 2015, examination, Donald informed Defendant Garcia he was a regular opioid and Xanax user and he was currently suffering from withdrawal and "kicking bad," referring to withdrawing from heroin and Xanax. Available RACADF records further showed that Donald had a history of bloody vomit when going through withdrawal.

56.   Defendant Garcia cleared Donald for incarceration and placed him on a detoxification protocol. As a result, Donald was seen again by Defendant Garcia at approximately 8:30 p.m. on October 3, 2015, and then at approximately 9:30 a.m. the following morning on October 4, 2015.

57.   Donald was severely ill and unable to walk to any of the medical "appointments" on October 3, 2015, or October 4, 2015. Correctional Officers transported him from his cell to Defendant Garcia, and back, via a wheeled restraint chair on those occasions. Surveillance video

from the RACADF shows Donald was not restrained in the chair, but was wheeled to medical by staff and was largely unresponsive at those times.

58.     Ms. Mathiasen and Ms. Cordova were seriously concerned about Donald's health and welfare following his arrest. Both Ms. Mathiasen and Ms. Cordova contacted authorities at the RACADF on multiple occasions while Donald was held there beginning October 2, 2015, and expressed concern about his health while relaying his near-death experience related to his earlier incarceration at the RACADF in 2013. Each also requested careful watch and care for Donald and were assured by RACADF staff Donald would be watched and cared for appropriately.

59.     Donald was not appropriately watched and cared for while incarcerated at the RACADF.

60.     While confined to his cell, Donald suffered immensely. He regularly vomited, defecated, including diarrhea, and urinated on himself. Other inmates overheard his frequent vomiting and observed vomit, urine and feces on Donald and on his clothes.

61.     Fellow inmates attempted to keep Donald clean with towels and clean bedding they sought from RACADF staff, but they were unable to fully keep up with the amount of vomit and waste.

62.     Upon information and belief, Donald's fellow inmates sought several new towels and sets of bedding in a failing effort to at least keep Donald dry and not covered in his diarrhea, vomit, and urine. One inmate estimated they went through four rolls of towels, five sets of sheets, five blankets, and three cans of disinfectant spray trying to handle Donald's situation. The inmate further indicated he used two trash bags to dispose of Donald's vomit.

63.     At least one of Donald's fellow inmates informed RACADF staff he feared for Donald's life, in part because he was vomiting so much he was likely to "choke and die."

64.     Donald became delirious over the time he was left in his cell in a puddle of his own waste and begging for relief. He soon became almost completely unresponsive and was entirely unable to get up without assistance.

65.     Defendant Deleon was the correctional officer overseeing inmates in the booking area, including Donald, during the late-night hours of October 3, 2015. Defendant Deleon was informed by other correctional staff that Donald was "withdrawing and vomiting." Defendant Deleon noticed Donald was so ill he was "having a hard time trying to walk on his own."

66.     Defendant Jordan was acting as shift supervisor during the night of October 3, 2015. He was aware Donald required a wheeled restraint chair to get to medical for "detox protocol" at approximately 8:20 p.m. on October 3, 2015.

67.     At approximately 8:20 p.m. on October 3, 2015, Donald was wheeled by Defendant Deleon to medical, where he was examined by Defendant Garcia in the presence of Defendant Jordan. At that time, Donald was disoriented as to why he was there.

68.     Upon information and belief, Defendant Garcia recognized Donald's compromised state. However, rather than provide appropriate medical care to Donald, Defendant Garcia asked he be contacted if any problems arose with Donald during the night.

69.     Defendant Ramirez took over as the correctional officer overseeing inmates in the booking area, including Donald, after Defendant Deleon on October 3, 2015. Defendant Ramirez was briefed on Donald's condition by Defendant Deleon. Defendant Ramirez saw that Donald required the assistance of another inmate to use the bathroom.

70.     Defendant Carrillo was also a correctional officer assigned to various tasks in the booking area, where Donald was held, during the late night and morning hours of October 3, 2015, and October 4, 2015.

71.     Defendant Madrid was also a correctional officer assigned to the booking area, where Donald was held, during the early morning hours of October 4, 2015. Defendant Madrid was informed by Defendant Ramirez that Donald had medical concerns, but Defendant Madrid took no action based thereon.

72.     Despite Donald's obviously deteriorating condition and serious symptoms exhibited earlier in the night, Defendants merely did simple head count checks a few times during the night. Upon information and belief, Defendants took no further action to monitor Donald's wellbeing and health.

73.     As Donald's condition drastically worsened, Defendants took no remedial action although they were aware Donald was extremely ill.

74.     On Sunday, October 4, 2015, Donald was sweating, lethargic and unresponsive when he was wheeled to Defendant Garcia as part of his "detox protocol."

75.     In the medical office, Donald almost immediately began to vomit what appeared to be "brown coffee ground fluids" from his mouth and nose, but was actually partially digested blood from internal hemorrhaging. His blood pressure dropped to 74/32 and his pulse fell all the way to 30. Only then did Defendants begin to seek emergency medical care for Donald.

76.     Immediately thereafter, Defendant Garcia and RACADF personnel moved Donald into the hallway outside the medical office and turned his head to the side as Donald continued to cough up immense amounts of digested blood, spreading and pooling on the floor.

77.     Donald died on the floor of RACADF. The cause of death was determined by the Office of the Medical Investigator to be "upper gastrointestinal hemorrhage due to Mallory-Weiss tear due to vomiting due to opiate (probably heroin) withdrawal."   In other words, Donald's esophagus tore open from the inside due to the extreme vomiting he suffered since his booking on

October 2, 2015, and he bled to death over the period of time he was incarcerated and denied appropriate medical care.

78.     Between his booking on October 2, 2015, and his death on October 4, 2015, Donald did not have access to counsel.

79.     Other than the three brief visits to Defendant Garcia, Donald was not provided any medical assistance despite his pleas for assistance and transport to the hospital, other inmate's pleas for assistance and proper medical care, the warnings on his booking paperwork and within his medical chart, and his very obviously and rapidly declining health.

80.     Between Donald's booking on October 2, 2015, and his death on October 4, 2015, Defendants Martinez, Culin and Jordan (hereinafter collectively referred to as "Supervising Officer Defendants") were supervising detention officers overseeing the activities of other officers and managing the booking unit where Donald was held.

81.     Between Donald's booking on October 2, 2015, and his death on October 4, 2015, Defendants Deleon, Ramirez, Carrillo, and Madrid (hereinafter collectively referred to as "Detention Officer Defendants") were, at varying times, assigned as detention officers to the booking area where Donald was held.

82.     Defendants knew, or should have known, Donald was suffering from a serious medical condition on October 2, 2015, October 3, 2015, and October 4, 2015, before his death.

83.     Defendants knew, or should have known, Donald was unlikely to receive appropriate medical care for his serious medical needs at the RACADF.

84.     Defendants knew, or should have known, Donald required emergency medical care.

85.     Defendants acted with deliberate indifference to Donald's serious medical needs and failed to provide him with available appropriate life-saving treatment or transport him to a

hospital or other medical facility in a timely manner for appropriate treatment.

86.     Had timely and proper procedures been conducted by Defendants, Donald's condition would not have become fatal. Because of the failure to properly examine, diagnose and treat Donald's condition, Donald was denied the opportunity to receive timely life-saving medical treatment.

87.     In addition, Defendants' failure to transport Donald to an appropriate medical facility on October 2, 2015, October 3, 2015, and October 4, 2015, denied Donald the opportunity to receive timely life-saving medical treatment.

88.     Upon information and belief, the Rio Arriba Defendants and Supervising Officer Defendants had a policy or custom of not timely responding to medical concerns of incarcerated persons, and routinely dismissing serious medical needs of inmates they perceived as suffering from withdrawal, causing serious injuries and death.

## COUNT ONE
### (Claims Against Defendants Rio Arriba County, Aquino, DeYapp, Martinez, Culin, Jordan, Deleon, Ramirez, Madrid and Carrillo Arising Under the New Mexico Tort Claims Act)

89.     Plaintiffs incorporate all the preceding paragraphs as if fully set forth herein.

90.     At all times material hereto, Defendant Aquino served as a Sheriff's Deputy within the Rio Arriba County Sheriff's Office and was acting within the scope of his employment as a Sheriff's Deputy for the Rio Arriba County Sheriff's Office.

91.     At all times material hereto, Defendant Rio Arriba County operated the RACADF, by and through Defendant DeYapp, who served as Detention Administrator of RACADF, the Supervising Officer Defendants, and the Detention Officer Defendants.

92.     At all times material hereto, Defendant DeYapp was acting within the scope of his employment as Detention Administrator, and Defendants Martinez, Culin, Jordan, Deleon,

Ramirez, Carrillo and Madrid were acting within the scope of their employment as correctional staff for Defendant Rio Arriba County.

93.     Defendants Rio Arriba County, DeYapp, and the Supervising Officer Defendants and Detention Officer Defendants had a duty to exercise reasonable care in the maintenance, supervision, and operation of the premises of their facilities, including RACADF.

94.     Defendants Rio Arriba County, DeYapp, and the Supervising Officer Defendants had a duty to exercise reasonable care in the hiring, training and supervising of their employees, contractors, representatives and agents to ensure the same did not act negligently in the operation and/or maintenance of the RACADF.

95.     Defendants Rio Arriba County, DeYapp, Aquino, the Supervising Officer Defendants and Detention Officer Defendants had a duty to exercise reasonable care, including ensuring arrestees and inmates within their custody and control received adequate medical care and treatment.

96.     Defendants Rio Arriba County and DeYapp's duty to exercise reasonable care in hiring, training and supervising their employees, contractors, representatives and agents included the obligation to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of the RACADF, including procedures for providing appropriate medical care to in-custody persons.

97.     Defendants Rio Arriba County, DeYapp, and the Supervising Officer Defendants failed to exercise reasonable care in the operation and maintenance of the RACADF because they failed to adopt and implement reasonable, common-sense procedures to ensure inmates received adequate and appropriate medical care.

98.     Defendants Rio Arriba County, DeYapp, Aquino, and the Supervising Officer

Defendants and Detention Officer Defendants, failed to use ordinary care as it relates to providing Donald with appropriate medical diagnoses, treatment and care for a serious medical condition or otherwise making appropriate medical care available to him while he was in their custody.

99.     Defendants Rio Arriba County, DeYapp, and the Supervising Officer Defendants breached their duties of care to Donald by failing to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of the RACADF; failing to properly supervise employees and agents of the RACADF, who themselves failed to prevent harm and injuries to Donald; and by otherwise failing to take appropriate and reasonable action to prevent the injury, illness, and eventual death suffered by Donald.

100.    Defendant Aquino and the Supervising Officer Defendants and Detention Officer Defendants failed to take appropriate and reasonable action to prevent the injury, illness and eventual death suffered by Donald.

101.    Defendants Rio Arriba County, DeYapp, Aquino, and the Supervising Officer Defendants and Detention Officer Defendants intentionally and/or recklessly delayed appropriate and accessible medical care for Donald's readily apparent serious medical condition.

102.    The policies and customs adopted by Defendants Rio Arriba County and DeYapp failed to ensure proper and adequate medical treatment and care was provided to inmates and detainees at RACADF, and thereby resulted in Donald's injury, illness and ultimate death.

103.    As a result of Defendants Rio Arriba County, DeYapp, Aquino, and the Supervising Officer Defendants and Detention Officer Defendants, Donald did not receive appropriate and accessible medical care for his condition and suffered severe pain and suffering, loss of chance of life, and death.

104.    The conduct of Defendants Rio Arriba County, DeYapp, Aquino, and the

18

Supervising Officer Defendants and Detention Officer Defendants was a direct and proximate cause of the injury, illness and ultimate death suffered by Donald and the resulting damages described herein.

## COUNT TWO
### (Claims Against Defendants Southwest Medical, Accountable Healthcare and Patrick Garcia for Negligence Causing Wrongful Death)

105.    Plaintiffs incorporate all the preceding paragraphs as if fully set forth herein.

106.    At all times material hereto, Donald was under the medical responsibility, care, and treatment of Defendants Southwest Medical, Accountable Healthcare and Patrick Garcia.

107.    Defendant Southwest Medical, and its employees, contractors and agents, including Defendants Accountable Healthcare and Patrick Garcia, had a duty to exercise reasonable care to protect the health and safety of persons under their medical responsibility, care, and treatment, including Donald, and, in particular, to take reasonable steps to provide adequate medical care to the same.

108.    Defendant Accountable Healthcare, and its employees, contractors and agents, including Defendant Patrick Garcia, had a duty to exercise reasonable care to protect the health and safety of persons under their medical responsibility, care, and treatment, including Donald, and, in particular, to take reasonable steps to provide adequate medical care to the same.

109.    Defendant Southwest Medical, and its employees, contractors and agents, including Defendants Accountable Healthcare and Patrick Garcia, had a duty to exercise reasonable care in carrying out their duties and providing medical care at RACADF in such a way that inmate safety and medical care was not unreasonably compromised.

110.    Defendant Accountable Healthcare, and its employees, contractors and agents, including Patrick Garcia, had a duty to exercise reasonable care in carrying out their duties and

providing medical care at RACADF in such a way that inmate safety and medical care was not unreasonably compromised.

111.     Defendant Southwest Medical, and its employees, agents and contractors, including Defendants Accountable Healthcare and Patrick Garcia, had a duty to exercise the degree of care, skill, and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances.

112.     Defendant Accountable Healthcare, and its employees, agents and contractors, including Defendant Patrick Garcia, had a duty to exercise the degree of care, skill, and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances.

113.     Defendants Southwest Medical, Accountable Healthcare and Patrick Garcia breached the standard of care by failing to assess, monitor, treat and provide appropriate medical care for Donald, despite his obvious signs of medical distress.

114.     Defendants Southwest Medical, Accountable Healthcare and Patrick Garcia breached the standard of care by failing to conduct appropriate tests to determine the cause of Donald's symptoms.

115.     Defendants Southwest Medical, Accountable Healthcare and Patrick Garcia breached the standard of care by failing to properly diagnose the cause of Donald's symptoms.

116.     Defendants Southwest Medical, Accountable Healthcare and Patrick Garcia breached the standard of care by failing to properly treat Donald's serious medical condition.

117.     As a direct and proximate result of the actions and/or omissions of Defendants Southwest Medical, Accountable Healthcare and Patrick Garcia, Donald suffered pain and suffering, loss of chance of life, and death.

**COUNT THREE**
**(Claims Against All Defendants for Deprivation of Civil Rights in Violation of § 1983)**

118.     Plaintiffs incorporate all the preceding paragraphs as if fully set forth herein.

119.     There are well-established substantive due process rights set forth by U.S. Const. amend. XIV and N.M. Const. art. II, § 18, prohibiting improper punishment of pre-trial detainees prior to adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520 (1979).

120.     Due process requires the State to provide for a pre-trial detainee's basic human needs, including medical care. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989). The standards for determining violations of due process as to pre-trial detainees in this context are, at a minimum, coextensive with those standards prohibiting cruel and unusual punishment of convicted prisoners under U.S. Const. amend. VIII and N.M. Const. art. II, § 13. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239 (1983).

121.     Prohibited cruel and unusual punishment includes a deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976).

122.     As a provider of medical services for inmates and detainees in custody at the RACADF, Defendants Southwest Medical, Garcia and Accountable Healthcare were operating as state actors under the color of law.

123.     Donald's serious and apparent medical condition demonstrated the obvious need for additional and continuing medical treatment, or the need to refer him to a medical specialist or to an appropriately equipped medical facility.

124.     Defendants were aware the medical treatment facilities at RACADF were insufficient to meet the needs of an individual with serious medical needs such as Donald.

125.     Defendants were aware the medical care available to inmates and detainees at RACADF was insufficient to meet the needs of an individual with serious medical needs such as Donald.

126.    Despite the obvious need for medical attention and care, Defendants denied Donald care during his detention and time in the custody of the Rio Arriba County Sheriff's Office and at the RACADF.

127.    Defendants failed to provide for an appropriate and sufficiently thorough initial medical evaluation to ensure inmates and detainees, such as Donald, would not be subjected to detention at RACADF if they required medical attention and care that the facility was not equipped to provide.

128.    The actions or omissions of the Defendants demonstrate a policy or custom that fails to ensure inmates and detainees with serious medical needs receive appropriate and necessary medical care in a timely manner.

129.    The failure of the Defendants to ensure that inmates and detainees with serious medical needs receive appropriate and necessary medical care in a timely manner resulted in a custodial situation wherein Defendants knew or should have known inmates and detainees such as Donald would be deprived of their constitutional rights.

130.    The failure of the Defendants to ensure inmates and detainees with serious medical needs received appropriate and necessary medical care in a timely manner demonstrates a deliberate indifference to the serious medical needs of inmates and detainees within their custody.

131.    The policies and customs of the Defendants caused Donald's constitutional injuries, including cruel and unusual punishment and violation of due process, and ultimately, his death.

132.    Due directly to the Defendants' failure to ensure inmates and detainees with serious medical needs received appropriate and necessary medical care in a timely manner, Donald was deprived of adequate and appropriate medical treatment during his incarceration and detention.

133.    Due directly to the Defendants' failure to ensure inmates and detainees with serious

medical needs received appropriate and necessary medical care in a timely manner, Donald suffered an unnecessary and wanton infliction of pain.

134.    Due directly to the Defendants' failure to ensure inmates and detainees with serious medical needs received appropriate and necessary medical care in a timely manner, Donald suffered damages and death.

135.    The acts and omissions of the aforementioned Defendants were intentional, willful, wanton, and with malice.

136.    An award of damages against the Defendants is appropriate for violations of Donald's rights under U.S. Const. amend. IV, U.S. Const. amend. VIII, U.S. Const. amend. XIV, N.M. Const. art II, § 13, and N.M. Const. art. II, § 18.

**COUNT FOUR**
**(Supervisory Liability Claims Against Defendants Rio Arriba County,**
**DeYapp, Martinez, Culin and Jordan)**

137.    Plaintiffs incorporate all the preceding paragraphs as if fully set forth herein.

138.    Defendants Rio Arriba County, DeYapp, Martinez, Culin and Jordan were aware that persons subjected to incarceration or detention can have serious medical needs that require immediate diagnosis and access to appropriate medical care. Despite this awareness, said Defendants failed to properly train and supervise their employees and agents to implement and maintain proper procedures to stop preventable harm to individuals subjected to incarceration or detention with serious medical needs such as requiring immediate full medical screening and diagnosis, and providing access to appropriate and necessary medical care, including referrals and transport for persons subject to custody that required medical attention and care from specialists unavailable to inmates and detainees at the RACADF.

139.    Said Defendants were aware the RACADF did not have appropriate medical

facilities or capabilities to provide necessary medical care for inmates and detainees with serious medical needs such as Donald. Nevertheless, said Defendants failed to properly train and supervise their employees and agents to implement and maintain proper procedures to stop preventable harm to individuals potentially subject to custody under their authority such as requiring immediate full medical screening and access to appropriate and necessary medical care for serious medical needs.

140.    Said Defendants maintained an official policy, custom or practice of incarcerating or detaining individuals at the RACADF without providing appropriate, necessary and timely medical care for serious medical needs of inmates and detainees at the RACADF.

141.    As a result of the aforementioned policy, practice or custom, said Defendants, their agents, representatives or employees detained Donald in custody without providing appropriate, necessary and timely medical diagnosis and care for his serious medical needs, thereby causing Donald to suffer cruel and unusual punishment and violation of his right to due process, ultimately resulting in his death.

142.    The risk that inmates and detainees with serious medical needs will be endangered when inadequate steps are taken to ensure timely access to necessary medical diagnosis, treatment and care is grave, and the need for proper training and procedures to guard against the same is obvious. Despite this risk, said Defendants did not arrange for proper training and procedures, thereby displaying an official custom, policy or practice which was deliberately indifferent to the rights of Donald and other inmates and detainees at RACADF.

143.    There is a direct and proximate causal connection between said Defendants' failure to properly hire, train, supervise, retain, and admonish their employees and agents, and the custom, policy or practices outlined above and the violation of Donald's constitutional rights.

144.    The custom, policy or practices of the aforementioned Defendants outlined above

amount to deliberate indifference.

145.    The acts and omissions of the aforementioned Defendants were intentional, willful, wanton, and with malice.

146.    The acts and omissions of the aforementioned Defendants caused Donald to suffer damages and death.

## COUNT FIVE
### (Claims Against Defendants Southwest Medical, Accountable Healthcare and Garcia for Failure to Provide Medical Treatment)

147.    Plaintiffs incorporate all the preceding paragraphs as if fully set forth herein.

148.    There are well-established rights prohibiting the cruel and unusual treatment of prisoners as set forth by U.S. Const. amend. VIII and N.M. Const. art. II, § 13.

149.    Prohibited cruel and unusual punishment includes a deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976).

150.    As a provider of medical services for inmates and detainees in custody at the RACADF, Defendants Southwest Medical, Accountable Healthcare and Garcia were operating as state actors under the color of law.

151.    Defendants Southwest Medical, Accountable Healthcare and Garcia acted as gate-keepers for individuals brought to RACADF for incarceration or detention and made initial determinations as to medical fitness for detention and determinations as to referral of inmates and detainees to medical specialists or appropriately equipped medical facilities for the medical treatment of serious medical needs of inmates and detainees in the custody and care of the RACADF.

152.    Donald arrived at the RACADF with a serious medical condition that required immediate and careful treatment.

153.     Defendants Southwest Medical, Accountable Healthcare and Garcia knew or should have known that Donald arrived at the RACADF with a serious medical condition that required immediate and careful treatment.

154.     Defendants Southwest Medical, Accountable Healthcare and Garcia knew or should have known that it was necessary to refer Donald to a medical specialist or an appropriately equipped medical facility.

155.     Despite the obvious need for referral to a medical specialist or an appropriately equipped medical facility, Defendants Southwest Medical, Accountable Healthcare and Garcia denied appropriate and timely care to Donald although he presented symptoms that potentially created a medical emergency.

156.     Defendants Southwest Medical, Accountable Healthcare and Garcia knew or should have known of their inability to treat Donald due to the seriousness of his condition and their lack of appropriate facilities or expertise, but they nevertheless unnecessarily delayed referring him to an appropriately equipped medical facility.

157.     The delay caused by the aforementioned Defendants in fulfilling their gatekeeper role and obtaining appropriate medical treatment for Donald demonstrated deliberate indifference in obtaining necessary medical treatment for his serious medical condition.

158.     The delay caused by the aforementioned Defendants in fulfilling their gatekeeper role and obtaining appropriate medical treatment for Donald exacerbated his injuries, unnecessarily prolonged his pain and suffering, and ultimately failed to prevent his death.

159.     The delay caused by the aforementioned Defendants in fulfilling their gatekeeper role and obtaining appropriate medical treatment for Donald caused him substantial harm.

160.     The medical fitness determination, diagnosis and treatment that the aforementioned

Defendants provided to Donald was patently unreasonable and so cursory as to amount to no treatment at all.

161.    Donald suffered damages as a result of the aforementioned Defendants' acts and omissions.

## COUNT SIX
### (Vicarious Liability Against Defendants Southwest Medical and Accountable Healthcare)

162.    Plaintiffs incorporate all the preceding paragraphs as if fully set forth herein.

163.    Defendant Southwest Medical had a duty of reasonable care to protect inmates from preventable death while in their care.

164.    Defendant Southwest Medical had a duty to exercise reasonable care in screening, hiring, training, supervising and retaining medical professionals in its employ, including Defendant Patrick Garcia.

165.    Defendant Southwest Medical failed to adequately screen, hire, supervise and retain medical professionals in its employ assigned to RACADF, including Defendant Patrick Garcia.

166.    Defendant Southwest Medical's actions and/or omissions precipitated Donald's preventable death.

167.    Defendant Accountable Healthcare had a duty of reasonable care to protect inmates from preventable death while in their care.

168.    Defendant Accountable Healthcare had a duty to exercise reasonable care in screening, hiring, training, supervising and retaining medical professionals in its employ, including Defendant Patrick Garcia.

169.    Defendant Accountable Healthcare failed to adequately screen, hire, supervise and retain medical professionals in its employ assigned to RACADF, including Defendant Patrick

Garcia.

170.    Defendant Accountable Healthcare's actions and/or omissions precipitated Donald's preventable death.

171.    The conduct of Defendants Southwest Medical and Accountable Healthcare was willful, intentional, wanton, or taken in utter disregard for the safety and well-being of others, including Donald, and subjects it to punitive damages, to the extent allowed by law.

## COUNT SEVEN
### (Claims for Loss of Consortium Against All Defendants)

172.    Plaintiffs incorporate all the preceding paragraphs as if fully set forth herein.

173.    Plaintiff Heidi Mathiasen is the mother of Donald.

174.    Plaintiff Heidi Mathiasen and Donald, as parent and child, were mutually dependent, commonly contributed to a life together, emotionally reliant on each other, financially supported each other, and had quality shared experiences.

175.    Defendants owed a duty of care to Plaintiff Heidi Mathiasen because it was foreseeable that harm inflicted upon Donald would damage the relationship between Donald and his mother, Ms.  Mathiasen.

176.    Plaintiff Angelique Cordova was in a long-standing romantic relationship with Donald and the two had been engaged to be married.

177.    Plaintiff Angelique Cordova and Donald were mutually dependent, commonly contributed to a life together, emotionally reliant on each other, financially supported each other, and had quality shared experiences.

178.    Defendants owed a duty of care to Plaintiff Angelique Cordova because it was foreseeable that harm inflicted upon Donald would damage the relationship between Donald and his long-time significant other and fiancé, Ms. Cordova.

179.    Defendants violated their duty of care to Plaintiffs as set forth above.

180.    Plaintiffs individually suffered damages as a result of the aforementioned Defendants' acts and omissions.

## DAMAGES

WHEREFORE, Plaintiffs requests the following relief against Defendants:

A.    An award of compensatory damages, jointly and severally, as set forth above and any other consequential, incidental, and special damages, under any or all of the causes of action, in an amount to be determined at the trial of this case;

B.    An award of punitive and exemplary damages in an amount to be determined at the trial of this cause;

C.    An award of pre- and post-judgment interest on any amounts recovered herein;

D.    The costs of the action herein, including attorney fees under 42 U.S.C. § 1988; and

E.    Such other and further relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

ROTHSTEIN DONATELLI LLP


*/s/ Carolyn M. "Cammie" Nichols*
CAROLYN M. "CAMMIE" NICHOLS
500 4th Street, NW, Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
cmnichols@rothsteinlaw.com

PAUL M. LINNENBURGER
1215 Paseo de Peralta
Post Office Box 8180
Santa Fe, New Mexico 87504-8180
(505) 988-8004
plinnenburger@rothsteinlaw.com

*and*

JARED M. BARLIANT
Jared M. Barliant & Associates, P.C.
2904 Rodeo Park Dr. East, #400
Santa Fe, NM  87505
(505) 471-5100
jmbarliant@gmail.com

*and*

JOHN C. BIENVENU
Bienvenu Law Office
1215 Paseo De Peralta
Santa Fe, New Mexico 87504
(505) 982-3813
jbienvenu@bienvenulaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of April, 2018, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Mark Mowery
Rodey, Dickason, Sloan, Akin & Robb, P.A.
mmowery@rodey.com
*Attorneys for Patrick Garcia, RN*

Robert W. Becker, Esq.
rbecker@ylawfirm.com
*Attorneys for Board of County Commissioners of Rio Arriba County,*
*Larry DeYapp, James Culin, Elizabeth Ramirez, Guy Jordan,*
*Ronnie Carrillo and Joseph Aquino, Genaro Madrid, Alifonso DeLeon,*
*And Jimmy Martinez*

Tamara R. Safarik
McClaugherty and Silver, P.C.
tamara@mcsilverlaw.com
*Attorneys for Southwest Correctional Medical Group, Inc.*


                  <u>/s/ Carolyn M. "Cammie" Nichols</u>
                  ROTHSTEIN DONATELLI LLP